UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

| | | |
|---|---|---|
| RUBEN BARRAZA<br>Reg. #68620-079 | | PETITIONER |
| V. | NO. 2:19-CV-00161-JTR | |
| DEWAYNE HENDRIX, Warden,<br>FCI – Forrest City | | RESPONDENT |

### MEMORANDUM AND ORDER[1]

Petitioner Ruben Barraza ("Barraza") is currently a prisoner in the Federal Correctional Institution in Forrest City, Arkansas ("FCIFC"). In his § 2241 Petition for Writ of Habeas Corpus, Barraza challenges a prison disciplinary conviction he received, in July of 2018, while he was incarcerated in a Bureau of Prisons facility located in Beaumont, Texas.

## I. Background

On July 22, 2018, BOP Officer J. Smith filed an Incident Report stating, "at approximately 6:35 [a.m.], while conducting a security check in unit GC[,] I found inmate Barraza . . . standing in cubical 18 with an active cell phone in his hand. The

---

[1] The parties have consented in writing to allow a United States Magistrate Judge to exercise jurisdiction in this case. *Doc. 9.*

phone was a blue Samsung and it had a Verizon logo on the back of it." *Doc. 5-1 at 6*.[2]

At 8:15 a.m. on July 23, 2018, BOP Lieutenant W. Fontenot served Barraza with the Incident Report. *Id*. An initial hearing before the Unit Discipline Committee ("UDC") was scheduled for the next day. Barraza told Lt. Fontenot that he had "no comment" and requested no witnesses for the UDC hearing. *Id*.

At 10:00 a.m. on July 24, 2018, the UDC began a hearing on the disciplinary charge. *Id. at 10-11*. Barraza was present at the hearing and advised the UDC he had "no comment." *Id*. Rather than making a decision on the merits, the UDC told Barraza they were referring the charge to a Disciplinary Hearing Officer ("DHO") "so if found guilty DHO can implement greater sanctions than UDC can impose[,]" including the loss of good conduct time. *Id*. The UDC also informed Barraza of his rights to: (1) have a written copy of the disciplinary charge at least 24 hours prior to appearing before the DHO; (2) have a staff member represent him at the DHO hearing; (3) call witnesses and present documentary evidence at the DHO hearing; (4) be advised in writing of the DHO's decision; and (5) appeal the DHO's decision through the BOP's administrative remedy procedure. *Id*.

---

[2] Respondent has attached the relevant disciplinary documents to the supporting Declaration of James Crook, Supervising Attorney with the Federal Bureau of Prisons Consolidated Legal Center. *Doc. 5-1*.

2

Barraza advised the UDC that he wanted to be represented by a staff representative at the DHO hearing but indicated that he did not wish to call any witnesses. *Id.*

On July 25, 2018, at 11:50 a.m., DHO Lacy conducted a hearing on the disciplinary charge. *Doc. 5-1 at 5*. DHO Lacy acknowledges that Barraza "[had] request[ed] a staff representative however [Barraza] elected to waive the staff representative by signing the Notice of Hearing form." *Id.* Barraza contests that assertion and claims that, when the staff representative assigned to his case did not show up at the hearing, he requested a replacement but "no one else was called to replace her and to be my Staff Representative." *Doc. 2 at 18*. The DHO then proceeded to conduct the hearing, without a staff representative present to represent Barraza.

On July 31, 2018, DHO Lacy issued her written report, concluding that Barraza violated Code 108 by possessing a cell phone:

> The DHO finds that you . . . did commit the prohibited act of Possession of a cell phone in violation of code 108.  The DHO relies upon the reporting officer's statement[.]
> . . .
> The DHO based her decision on the greater weight [of the evidence].  The DHO took into consideration the photos along with your admission to the charge during the hearing stating "*I admit to the charge the cell phone was mine*."
> . . .
> Possession of a cell phone in a correctional setting is a serious violation.  This act jeopardizes the secure and orderly running of the institution and could escalate into a confrontation between inmates and/or staff.

3

*Doc. 5-1 at 5* (emphasis added). As punishment, Barraza lost 41 days of good conduct time and 270 days of phone and commissary privileges. *Id.*

On August 31, 2018, Barraza administratively appealed his disciplinary conviction. *Doc. 2 at 18*.

Sometime between August 31, 2018, and November 9, 2018, the BOP transferred Barraza from its Beaumont, Texas facility to FCIFC.[3]

On November 9, 2018, the Regional Director responded to Barraza's administrative appeal, stating: "This case has been remanded to the institution for a rehearing. You will be advised of the date and time of the hearing. You will be afforded all rights as in the original hearing." *Doc. 5-1 at 13*. The Regional Director did not give a reason why a rehearing was ordered, but the record suggests it was due to an internal "administrative error" that resulted in the Incident Report not being delivered to Barraza within 24 hours of the incident.[4]

Prior to the rehearing, Barraza requested "Case Sparkmon" as his Staff Representative. *Id. at 19*.

---

[3] The specific date of Barraza's transfer is not clear. *See Doc. 2 at 1*; *Doc. 5-1 at 13*.

[4] Prior to the rehearing at FCIFC, DHO Chatters sent an email to Lt. Fontenot at Beaumont Camp asking why the Incident Report was not delivered to Barraza within 24 hours of Officer Smith observing the violation. *See* Email Exchange between DHO Chatters and Lt. Fontenot (Nov. 15, 2008), *Doc. 5-1 at 21*. Officer Fontenot responded that "[t]he IR [Incident Report] was not delivered on time due to [a]dministrative error." *Id*.

4

On December 4, 2018, DHO Chatters conducted the rehearing at FCIFC. *Id. at 16*. Staff Representative Sparkmon did not show up for the hearing. According to Barraza, he requested another staff member to represent him, but DHO Chatters told him he did not need a representative. *Doc. 2 at 4*. According to DHO Chatters, "[Barraza] waived [his] right for . . . Sparkmon to appear and . . . elected to proceed with the DHO hearing." *Doc. 5-1 at 16*; *see also* BP-294 Form, *Doc. 5-1 at 27*.

On December 11, 2018, DHO Chatters issued her written report, upholding the sanctions previously imposed by DHO Lacy: 41 days' loss of good time credit, and 270 days' loss of commissary and phone privileges. *Id. at 15-17*.[5] DHO Chatters relied on the following evidence to find that Barraza possessed a cell phone in violation of Code 108: (1) Officer Smith's statement in the Incident Report that he saw Barraza with the cell phone in his hand; (2) a photograph of the blue Samsung cell phone that Officer Smith confiscated from Barraza; and (3) Barraza's prior admission to DHO Lacy that he possessed the cell phone. *Id. at 15*.

Barraza administratively appealed DHO Chatters's decision. On September 5, 2019, the BOP affirmed the disciplinary conviction and sanctions. *Doc. 2 at 14*.

---

[5] According to Barraza, he did not receive DHO Chatters' report until months later. *Doc. 2 at 12*. However, the report states that it was "[d]elivered to Inmate [Barraza]" on December 20, 2018. *Doc. 2 at 24*. To the extent a delay occurred in Barraza receiving DHO Chatters's report, it is not material to the resolution of the merits of Barraza's claims.

On December 18, 2019, Barraza filed this § 2241 habeas Petition, in which he claims his due process rights were violated in the following ways:

(1)   He was not provided notice of the disciplinary charge within 24 hours of BOP staff becoming aware of the incident. *Id.* at 7.

(2)   He was denied a staff representative at his hearing and rehearing. *Id.* at 7.

(3)   His transfer to FCIFC prevented him from calling witnesses and obtaining evidence at his rehearing. *Id.* at 7.

(4)   He was unable to access legal materials prior to his DHO hearing and rehearing. *Id.* at 10.

(5)   The DHOs falsely stated in their reports that Barraza admitted to possessing the cell phone. *Id.* at 8, 10.

(6)   His disciplinary conviction is not supported by "real evidence." *Id.* at 8.

On January 22, 2020, Respondent filed a Response, arguing that Barraza's Fifth Amendment due process rights were not violated and his disciplinary conviction was supported by "some evidence." *Doc. 5*. On February 12, 2020, Barraza filed a Reply. *Doc. 8*. Thus, the legal issues surrounding the merits of Barraza's habeas claims are joined and ready for disposition.

## II. Discussion

### A. The Procedural Due Process Requirements Of *Wolff* Were Not Violated In Either Of Barraza's Disciplinary Hearings.

A prisoner's loss of good conduct time for violating a prison rule implicates liberty interests protected by the Due Process Clause. *See Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002). In *Wolff v. McDonnell*, 418 U.S. 539, 555-558 (1974), the Court held that, in a disciplinary hearing in which a prisoner loses good conduct time for violating a prison rule, procedural due process, at a minimum, requires: (1) a prisoner be given written notice of the disciplinary charge at least 24 hours *before* the disciplinary hearing; (2) a prisoner be given an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a prisoner be given a written statement from an impartial decision maker identifying the evidence relied on and the reasons for the disciplinary action. *Id.* at 563-567.

#### 1. Barraza Received The Required Written Notice Of The Disciplinary Charge At Least 24 Hours Before Both Disciplinary Hearings.

According to Barraza, the BOP *must* serve a prisoner with notice of a disciplinary charge no later than 24 hours from the time staff becomes aware of the incident. Because the Incident Report was not delivered to him until 25 hours and 40 minutes after Officer Smith observed the incident, Barraza argues that his due process rights were violated, under 28 C.F.R. 541.5, which provides that prisoners

"will *ordinarily* receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." (Emphasis added.)  Barraza's argument conflates the constitutionally required written notice a prisoner must be given of the disciplinary charges, *at least 24 hours before the disciplinary hearing*, with the C.F.R. regulation which provides that a prisoner *ordinarily* will receive the written report of the incident *within 24 hours of staff becoming aware of his involvement in the incident*.  As a result, the argument is fatally flawed and without legal merit.

On its face, 28 C.F.R. 541.5 states that *ordinarily* staff must provide a prisoner with the written incident report within 24 hours of staff becoming aware of the incident.  "Ordinarily" is an adverb of indefinite frequency that means *usually*.  The use of this term makes it clear the 24-hour time period may be exceeded in cases that require more time to investigate the charge or where staffing problems delay the preparation of the incident report.  *See Delgadillo v. Outlaw*, No. 2:12-cv-00174-BD, 2013 WL 1246857, at *2 (E.D. Ark. Mar. 27, 2013).  Thus, the use of the term "ordinarily" allows staff some flexibility to extend the specified 24 hours within which they must deliver the written report of the incident to the prisoner.  Certainly, applied to the facts in this case, this flexibility allowed staff to extend the 24 hours, *by less than two hours*, and deliver the written incident report to Barraza 25 hours and 40 minutes after the incident took place.

8

Finally, *even if this were construed to be a violation of the regulation*, it does not rise to the level of a violation of Barraza's due process rights under the Fifth Amendment.  *Goff v. Dailey*, 991 F.2d 1437, 1442 n. 9 (8th Cir. 2003); *see also Jones v. Cross*, 637 F.3d 841, 846 (7th Cir. 2011).  BOP regulations that are codified in the Code of Federal Regulations are "primarily designed to guide correctional officials in the administration of a prison [not] to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995); *see also Bonner v. Fed. Bureau of Prisons*, 196 F. App'x 447, 448 (8th Cir. 2006) ("violation of prison regulations in itself does not give rise to a constitutional violation") (citing *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir.2003)).

In contrast, under *Wolff*, the BOP was *constitutionally required* to provide written notice of the disciplinary charge to Barraza at least 24 hours *before his disciplinary hearing*.  *Wolff*, 418 U.S. 564.  Lt. Fontenot delivered the Incident Report to Barraza on July 23, 2018.  The first DHO hearing was conducted over two days later at 11:50 a.m. on July 25, 2018.

On November 9, 2018, the Regional Director provided Barraza with written notice that his disciplinary conviction had been reversed and remanded for a rehearing.  Barraza's rehearing before DHO Chatters occurred over three weeks after he received that notice on December 4, 2018.

Accordingly, because Barraza received written notice of the disciplinary charge more than 24 hours before *both* his disciplinary hearing in Beaumont, Texas, *and* his disciplinary rehearing in FCIFC, his Fifth Amendment due process rights were not violated. Thus, his lack of timely notice argument is without merit.

> **2. The BOP's Failure To Provide Barraza With A Staff Representative At The DHO Hearing And Rehearing Does Not Rise To The Level Of A Constitutional Violation.**

Barraza also argues that the BOP violated his right to due process by not providing him with a staff representative at the DHO hearing and rehearing. *Doc. 2 at 7*. The record does not explain why Barraza's requested staff representatives failed to appear at the initial DHO hearing and the rehearing. Because the BOP informed Barraza more than once that he had the right to a staff representative at his DHO hearings but never actually provided him with one, it is understandable why Barraza feels aggrieved by not getting the representation he was promised. However, such a violation of BOP policy does not provide Barraza with a constitutional basis for arguing that his due process rights were violated under the Fifth Amendment.

Under well established and controlling case law, a prisoner does *not* have a constitutional right to be represented by a staff representative in disciplinary proceedings, unless the prisoner is illiterate or the complexity of the issues is especially great. *Wolff*, 418 U.S. at 570; *Hudson v. Hedgepeth*, 92 F.3d 748, 751

(8th Cir.1996). Based on the record, it is clear that neither of these exceptions apply in this case. *Toombs v. Hicks*, 773 F.2d 995, 997 (8th Cir. 1985) ("absent infringement upon constitutional rights . . . courts are reluctant to interfere with internal discipline or operation of prisons").

To state a cognizable habeas claim, Barraza must demonstrate that his constitutional rights were violated. The BOP's failure to provide Barraza with a staff representative at the DHO hearings, *in violation of BOP policy*, fails to state a claim for habeas relief under 18 U.S.C. § 2241.

### 3. Barraza Offers No Support For His Claim He Was Denied The Opportunity To Present Witnesses And Evidence At His Disciplinary Rehearing.

Barraza complains that his transfer to FCIFC prevented him from calling witnesses and presenting evidence at the rehearing conducted by DHO Chatters. *Doc. 2 at 7*.

Under *Wolff*, the BOP was required to give Barraza an opportunity, consistent with institutional safety and correctional goals, to call witnesses and present other evidence in his defense at his disciplinary rehearing. *Wolff*, 418 U.S. 566. "At its essence, the disciplinary hearing ensures that the inmate has an opportunity to persuade an impartial decisionmaker, who must give written justification for his decision, that discipline is not warranted. This is the interest protected by the Constitution." *Goff*, 991 F.2d at 1441-1442.

Barraza does not identify *who* he would have called as a witness or *what* testimony the witness(es) would have offered at the rehearing to counter: (1) the eyewitness testimony of BOP Officer Smith who saw Barraza "standing in cubical 18 with an active cell phone in his hand" (*Doc. 5-1 at 6*); or (2) Barraza's admission to DHO Lacy, during his first disciplinary hearing, that: "I admit to the charge the cell phone was mine" (*Doc. 5-1 at 5*). Finally, Barraza fails to explain: (1) why prior to the initial DHO hearing conducted by DHO Lacy, he stated in writing that he did not wish to call any witnesses (*Doc. 5-1 at 11*); or (2) why he has not identified any specific documents or other evidence he was not able to review and present at his rehearing in FCIFC.

Accordingly, Barraza's conclusory allegation that he was unable to call witnesses and present evidence, based on his transfer to FCIFC, is not sufficient to establish a colorable constitutional violation.[6]

---

[6] To the extent Barraza is attempting to bring a standalone due process claim, it also fails. Federal courts have repeatedly held that unwanted prison transfers are a normal and expectable aspect of prison life, and transfers are not the kind of "atypical and significant hardship" that implicate constitutionally protected liberty interests. *Freitas v. Ault*, 109 F.3d 1335, 1337 (8th Cir. 1997) (prisoner had no constitutionally protected liberty interest in remaining in a less restrictive prison environment, and he therefore was not entitled to due process before being transferred to a more restrictive institution); *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668-669 (8th Cir. 1996) (prisoner was not entitled to due process before being transferred from a work release facility to far more restrictive housing in a state reformatory); *Moorman v. Thalacker*, 83 F.3d 970, 971 (8th Cir. 1996) (due process not required before effecting prisoner's transfer from minimum security facility to maximum security facility); *see also Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) (prison authorities "may transfer a prisoner 'for whatever reason or for no reason at all'").

      **4.**      **Barraza's Alleged Lack Of Access To Legal Materials Prior To His DHO Hearing And Rehearing Does Not State A Constitutional Violation.**

Barraza complains that he "was denied access to the Lexis/Nexis system" and "adequate legal materials to establish a defense" prior to the DHO hearing and rehearing. *Doc. 2 at 10*. However, Barraza does not explain how conducting legal research was necessary to prepare a defense to the charge of possessing a cell phone.

Prior to both hearings, Barraza was provided with written notice of the disciplinary charge and his rights in connection with defending himself against that charge. Because Barraza's guilt or innocence rested entirely *on the facts* – not the law – his alleged lack of access to "Lexis/Nexis" and "legal materials" in no way impacted his ability to present his defense to those charges. Finally, nothing in *Wolff* requires that a prisoner be allowed to conduct legal research prior to a disciplinary hearing.

Accordingly, Barraza's vague and conclusory claim that he was unable to conduct legal research, prior to his hearing before DHO Lacy and his rehearing before DHO Chatters, is not sufficient to establish a colorable constitutional violation.

### 5. Barraza Has Failed To Demonstrate That DHO Lacy And DHO Chatters Made False Statements In Their Reports.

Barraza makes the conclusory allegation that DHO Lacy and DHO Chatters "false[ly] report[ed]" that Barraza admitted in his first DHO hearing that he possessed the cell phone. *Doc. 2 at 10*. As previously explained, in DHO Lacy's written report finding Barraza guilty of the violation, she noted that she "took into consideration the photos [of the cell phone found to be in his possession], along with your [Barraza's] admission to the charge during the hearing . . . 'I admit to the charge the cell phone was mine.'" *Doc. 5-1 at 5*.

"The nature of the prison disciplinary proceedings compels the courts to give wide latitude to prison officials in the manner in which they conduct these proceedings." *Ivy v. Moore*, 31 F.3d 634, 635 (8th Cir. 1994). Disciplinary hearing officers are "entitled to a presumption of honesty and integrity," and "the constitutional standard for impermissible bias is high." *See Piggie v. Cotton*, 342 F.3d 660, 666 (8th Cir. 2003). For a petitioner to prevail on a claim that a DHO was biased, he must show that officer's conduct "gave [the officer] an interest adverse to [the prisoner's] interest 'so direct, personal, and substantial as to give rise to a due-process violation.'" *Id*.

Barraza does not allege having any prior history with DHO Lacy or DHO Chatters. Based on the record, their sole involvement was acting as the presiding

14

officer over the disciplinary hearing (DHO Lacy) and rehearing (DHO Chatters). Accordingly, Barraza's conclusory allegation that the DHOs provided "false reports" falls far short of the kind of specific facts required to rebut the "presumption of honesty and integrity" that accompanied the DHOs' decisions that Barraza was guilty based on the strong evidence presented during the disciplinary hearing and rehearing.

### B. Substantive Due Process And The "Some Evidence" Standard

Finally, Barraza argues that his disciplinary conviction is not supported by "real evidence." *Doc. 2 at 8*. Substantive due process requires only that the DHO's decision be supported by "some evidence in the record." *Espinoza*, 283 F.3d at 951-952 (citing *Hill*, 472 U.S. at 454). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-456. "[D]isciplinary actions may be taken –and often they are–based *only on a guard's report. Even when there is substantial evidence to the contrary, the committee may find a guard's report to be credible* and therefore take disciplinary action." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (quoting *Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993) (emphasis added in *Hartsfield*)).

Barraza argues the evidence supporting his disciplinary conviction is insufficient because the cell phone was found in Unit GC, an open dorm where over one hundred prisoners were housed, and in an area of the dorm, cubicle 18, where he was not assigned. *Id*. However, Barraza admits that, at the time of the incident, he was "assigned and living in Unit GC at Beaumont Camp facility," and there is *nothing* in the record to suggest that Barraza was not in cubicle 18 of *the open dorm* when BOP Officer Smith *saw* him with "an active cell phone in his hand." *Doc. 5-1 at 6*.[7]

Apart from Officer Smith stating in the Incident Report that he *saw* Barraza holding a cell phone in Unit GC of Beaumont Camp, Barraza admitted to DHO Lacy that "the cell phone was mine." This *far exceeds* the "some evidence" standard necessary to find Barraza guilty of possessing the cell phone.

### III. Conclusion

IT IS THEREFORE ORDERED THAT Barraza's § 2241 Petition for Writ of Habeas Corpus be and it is hereby dismissed, with prejudice, for failing to state a claim upon which relief may be granted.

---

[7] Barraza argues that Officer Smith's Incident Report is "defective" because it erroneously states the incident occurred at the neighboring "Beaumont Low" facility instead of "Beaumont Camp." *Doc. 2 at 8*. Because the Incident Report goes on to state that Officer Smith was conducting a security check in unit GC, a unit in the "Beaumont Camp" facility, it clearly was a scrivener's error for Officer Smith to state the incident occurred in "Beaumont Low." *Id*. Additionally, the Chain of Custody Log states the cell phone was recovered from Barraza at Beaumont's "Camp Unit GC." *Doc. 5-1 at 8*. Moreover, Barraza acknowledges, "I was actually assigned and living in Unit GC at Beaumont Camp facility." *Doc. 2 at 13*.

DATED this 9th day of October, 2020.

                                              _____
                                              UNITED STATES MAGISTRATE JUDGE